UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

FRANCYNE J. COOPER,

        Plaintiff,

v.                                  ACTION NO. 4:10cv110

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.

Plaintiff brought this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to section 216(i) and 223 of the Social Security Act. This Court recommends that the decision of the Commissioner be AFFIRMED.

**I.    PROCEDURAL BACKGROUND**

The plaintiff, Francyne Cooper ("Plaintiff") filed applications for DIB and SSI on

January 2, 2008, alleging she had been disabled since July 3, 2007. R. 138.[1] The applications stemmed from a shoulder injury Plaintiff sustained carrying a tool bag and pipes while on the job. R. 333. The Commissioner denied Plaintiff's applications, both initially on April 16, 2008 (R. 96-98) and upon reconsideration on October 7, 2008. R. 108-10.

At Plaintiff's request, a hearing before an Administrative Law Judge ("ALJ") (R. 111-12) took place on October 26, 2009, and an impartial vocational expert testified. R. 25-53. On November 3, 2009, based upon a review of both the record and applications, the ALJ issued a decision again denying Plaintiff's claims. R. 11-24. On July 10, 2010, the Appeals Council denied Plaintiff's request to review the ALJ's decision, making the ALJ's decision the Commissioner's final decision. R. 1-3.

Having exhausted all administrative remedies, Plaintiff filed a Complaint with this Court on September 2, 2010, in accordance with 42 U.S.C. § 405(g). ECF No. 3. Defendant Commissioner filed an Answer to the Complaint on March 18, 2011. ECF No. 9. On March 31, 2011, an Order was entered directing parties to file Motions for Summary Judgment. ECF No. 12. Plaintiff's Motion for Summary Judgment was submitted on May 2, 2011. ECF No. 14. Defendant Commissioner's Cross Motion for Summary Judgment was filed on June 1, 2011. ECF No 16. On June 2, 2011, Plaintiff filed her Reply to Defendant Commissioner's Cross Motion. ECF No. 18.

## II. FACTUAL BACKGROUND

Plaintiff is forty-four years of age and holds an Associates Degree in computer science. R. 390. On July 3, 2007, Plaintiff, then forty-two years old, allegedly hurt her right shoulder while working at Newport News Shipbuilding, her employer since 1997. R. 333, 449. Plaintiff

---

[1] Page citations are to the administrative record previously filed by the Commissioner.

had x-rays taken on the date of the injury, which revealed only a small right elbow joint effusion; no evidence of fracture, dislocation, or other bone abnormality was shown. R. 284. She was given an anti-inflammatory drug to help with any pain and released to return to work on July 6, 2007. R. 344. Though Plaintiff's taxable earnings signified substantial gainful activity for twenty years from 1987 to 2007 (R. 148), Plaintiff has not engaged in any substantial gainful activity since her alleged onset of disability on July 3, 2007. R. 30.

On July 12, 2007, Plaintiff underwent a cervical spine MRI, which revealed mild cervical spondylosis on vertebrates C4-5 and C6-7, but with no acute process. R. 335. Aside from these minor issues, the MRI performed was unremarkable. Id. An MRI of Plaintiff's right shoulder, also performed on this day, was similarly unremarkable. R. 332. On July 20, 2007, orthopedist John W. Aldridge, M.D. ("Aldridge") examined Plaintiff's right shoulder, for Plaintiff's complaint of an isolated aching pain. R. 322. Aldridge diagnosed Plaintiff with a right shoulder impingment, prescribing physical therapy and restricted right arm use for four weeks. Id.

Orthopedist Arthur W. Wardell, M.D. ("Wardell") examined Plaintiff's right shoulder on August 23, 2007. R. 379. At this exam, Wardell injected the shoulder with steroids and excused Plaintiff from work until September 7, 2007. R. 318. On September 6, 2007, an ultrasound performed on Plaintiff by Wardell revealed a right rotator cuff tear. R. 378. Wardell administered a steroid injection to the right shoulder on this date, as well as on three more occasions over the next six months. R. 369, 376-77. On October 25, 2007, Wardell excused Plaintiff from work for four more weeks. R. 316.

On May 27, 2008, Wardell performed right shoulder arthroscopic bursectomy and acromioplasty procedures for a partial rotator cuff tear. R. 493. At a follow-up appointment on June 5, 2008, Plaintiff indicated to Wardell that her shoulder was improving. R. 455. In a

Function Report completed by Plaintiff on July 29, 2008, Plaintiff indicated that she was able to attend to her son's needs, as well as her own personal needs. R. 212-13. Plaintiff could shop weekly, perform household chores, and manage her money. R. 214-15. She regularly attended doctor's appointments, therapy appointments, and church. R. 216. The only assistive devices utilized by Plaintiff were a TENS unit and eyeglasses. R. 218. Over the next few months, Plaintiff continued to improve. At a post-surgical appointment on August 28, 2008, Wardell noted that Plaintiff's right shoulder pain was "better." R. 365. On November 7, 2008, continued shoulder improvement was noted in Plaintiff's file. R. 456.

On September 16, 2008, psychologist Jerome Foer, Ph.D. ("Foer"), conducted a mental status examination on behalf of Disability Determination Services ("DDS"). R. 388. At this evaluation, Foer determined that, although Plaintiff may have difficulty with stress and consistency of employment, she nonetheless had the cognitive capacity to perform basic and repetitive job tasks, and was capable of accepting instructions from a supervisor, interacting with co-workers, and regularly attending work. R. 393. DDS Psychologist Daniel Walter, Psy. D. ("Walter"), reviewed the record and largely confirmed the findings and determinations of Foer.[2] R. 411. On October 7, 2008, DDS physician Michael Cole, D.O. ("Cole") reviewed the record and determined Plaintiff could perform medium exertion work. R. 435. In fact, Cole determined that the only limitation Plaintiff had with respect to normal working functions was in physically reaching a far distance for objects. R. 436. Aside from that small limitation, Cole noted that Plaintiff could perform work activity normally and consistently. R. 439. He also noted an improved range of right shoulder motion since her surgical operation. Id.

---

[2] Walter rejected Foer's determination that Plaintiff would have trouble with consistent work performance, as Foer did not diagnose Plaintiff with any sort of cognitive problem that would lead to such trouble. R. 411.

Plaintiff then visited a psychiatrist, Joselito Morales, M.D. ("Morales"), on November 24, 2008, claiming she felt overwhelmed and depressed about her "current life situation." R. 448. Though Morales noted Plaintiff's "flat affect," he determined that her recall, memory, concentration, abstract thinking, and insight and judgment were all well above-average. R. 449. Morales diagnosed Plaintiff with moderate depressive symptoms, prescribing an anti-depressant to be used. Id. At a follow-up appointment with Plaintiff three months later, Morales indicated that Plaintiff's depressive signs and symptoms were improving, exhibiting a coherent, friendly, and pleasant demeanor and normal motor activity. R. 446.

On January 16, 2009, Plaintiff visited neurologist and acupuncturist Qingyan Zhu, M.D. ("Zhu"), complaining of "staring spells," "one episode of [a] frying feeling in her head," and "neck pain." R. 441. Though Plaintiff "look[ed] sleepy," Zhu noted that her mental status, cerebellum, motor strength, and reflexes were all normal. Id. With respect to her sleepy state, Zhu indicated that Plaintiff had just taken some pain medicine. Id. Plaintiff did not return to Zhu's office until September 21, 2009, more than eight month after her first visit, complaining of headaches. R. 533. Zhu performed a series of tests on Plaintiff, including a neurological exam, the results of which were fully normal. R. 533. Cognitive function and motor strength were rated at one hundred percent function. Id.

Despite Zhu's reports that Plaintiff was fully functioning and healthy, on October 14, 2009, Zhu completed a physician report form ("Physician Report"), at the request of Plaintiff's attorney, pertaining to Plaintiff's disability claim. R. 524. On this form, Zhu listed many symptoms, including sever throbbing pain, sleep disturbance, decreased memory and cognitive function, speech problems, and confusion. Id. Zhu further indicated that Plaintiff was incapable of performing even a low stress job, could rarely lift anything weighing even a minimal amount,

had no postural or manipulative ability, and was required to use a cane when walking. R. 525-27.

Plaintiff's administrative hearing was held on October 26, 2009. Plaintiff testified that, since the date of the alleged disability, she has been unable to sit or stand for long periods of time, has a poor memory, suffers from depression, and is unable to complete basic chores around the house. R. 46. Also at this hearing, vocational expert Barbara Byers ("Byers") testified that, although Plaintiff's profile would not support working in any of her past jobs, light or sedentary unskilled work was feasible employment for Plaintiff. R. 51.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2011); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

When reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589; Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that

decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law. Perales, 402 U.S. at 390; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (citing Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980)).

Thus, reversing the denial of benefits is appropriate only if either (A) the ALJ's determination is not supported by substantial evidence on the record, or (B) the ALJ made an error of law. Coffman, 829 F.2d at 517.

### IV.    ANALYSIS

To qualify for a period of disability and DIB under section 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for DIB and a period of disability, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the inability to do any substantial gainful activity, by reason of any medically determinable physical or mental impairment,  which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505(a) (2011); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A) (2011). To meet this definition, the claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.

In evaluating disability claims, the regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether

the claimant is disabled. The ALJ must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment that prevents her from past relevant work, and (5) has an impairment that prevents her from any substantial gainful employment. An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability. This analysis is set forth in 20 C.F.R. § 404.1520.

In this case, the ALJ found the following regarding Plaintiff's condition. First, Plaintiff has not engaged in substantial gainful activity since July 3, 2007, the alleged onset date of disability. R. 13. This determination was supported by the fact that Plaintiff's earnings after this date represent solely short-term disability payments and a workman's compensation settlement. Id. Second, Plaintiff suffers from five severe impairments: a back disorder, neck disorder, right shoulder disorder, mood disorder, and headaches. Id. This finding was based on the objective findings on examinations, test results, psychological evaluations, and reports from treating physicians. R. 14. Third, while Plaintiff indeed was disabled, she did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. Plaintiff's injuries were not accompanied by findings or medical opinions that satisfied the Code provisions. Id. Fourth, Plaintiff is unable to perform any past relevant work due to her injuries. R. 18.

Fifth, Plaintiff has residual functional capacity to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with some physical limitations and exceptions. R. 16. This conclusion was made based on the ALJ's evaluation of Plaintiff's allegations of the

intensity, persistence, and limiting effects of injuries, as well as medical opinions of Morales, Wardell, Foer, and Zhu. R. 16-18. Plaintiff's complaints of pain and depression were found to be inconsistent with the objective findings of multiple examinations, documented improvement of shoulder and neck pain, and consistent improvements noted in the reports of Plaintiff's psychiatrist. R. 17. For this reason, the ALJ found Plaintiff's allegations, concerning her impairments and inability to engage in substantial gainful employment, questionable. Id. Further, Zhu's October, 2009 Physician Report concerning Plaintiff's disability was found to be inconsistent with his previous examinations of Plaintiff and other evidence on the record. R. 18. Therefore, Zhu's opinion as to Plaintiff's residual functional capacity was given less weight. R. 18. Lastly, the ALJ determined that, based on Plaintiff's age, education, work experience, and residual capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 19.

In her Motion for Summary Judgment, Plaintiff attacks the fifth and sixth findings of the ALJ decision, alleging that the ALJ erred by failing to consider her work history in assessing her credibility in seeking benefits. Mot. Summ. J. 5. She further claims that the ALJ erred in rejecting Zhu's medical source findings. Id. at 6. For these reasons, she asks for a reversal of the ALJ's decision, claiming it is not supported by substantial evidence. Id. at 8. This Court considered each argument, and recommends that the ALJ and Commissioner's decision is supported by substantial evidence and, therefore, should be affirmed.

    A. <u>Plaintiff's Work and Earnings History with Respect to Plaintiff's Credibility</u>

Plaintiff first argues that the ALJ erred in not sufficiently crediting her prior work history when assessing her credibility in making statements about her alleged disability. Mot. Summ. J. 5. She alleges that a claimant with a good work record is entitled to substantial credibility when

claiming an inability to work due to a disability. Id. (citing Rivera v. Schweiker, 717 F. 2d 719, 725 (2nd Cir. 1983) (internal citations omitted)).

After step three of the ALJ's five part analysis, but prior to deciding whether a claimaint can perform past relevant work at step four, the ALJ must determine a claimant's residual functional capacity. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The residual functional capacity must incorporate impairments supported by objective medical evidence and impairments based on credible complaints made by the claimant. The ALJ uses a two-step analysis in evaluating a claimaint's subjective complaints. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). First, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably produce the claimant's pain or symptoms. Id. In doing so, the ALJ must consider all relevant medical evidence in the record. Id. If the underlying impairment could reasonably be expected to produce the claimant's pain, the ALJ must then evaluate the claimant's statements about the intensity and persistence of the pain, as well as the extent to which it affects the individuals' ability to work. Id. at 595. The ALJ's evaluation must take into account all available evidence, including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the claimant's subjective statements. Id. at 595-96.

This Court is required to give great deference to the ALJ's credibility determinations. See e.g., Universal Camera Corp. v. NLRB, 340 U.S. 474, 488-91 (1951). The Fourth Circuit has held that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Edelco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997) (internal citations omitted). Therefore, this Court must accept the ALJ's assessment of Plaintiff's credibility unless it is unreasonable, contradicts other factual

findings, or is based on an insufficient reason. Id.

Furthermore, as the Fourth Circuit recognizes, Plaintiff's subjective statements about her pain are not, alone, conclusive evidence that Plaintiff is disabled. 20 C.F.R. § 404.1529(a). Rather, "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996). Finally, Social Security Ruling 96-7p states that the evaluation of a Plaintiff's subjective complaints must be based on consideration of all the evidence in the record, including, but not limited to: (1) medical and laboratory findings; (2) diagnoses and medical opinions provided by treating or examining physicians and other medical sources; and (3) statements from both the individual and treating or examining physicians about the claimant's medical history, treatment, response, prior work record, and the alleged symptoms' affect on the ability to work.

In this case, Plaintiff argues that her twenty-year good work record entitles her to substantial credibility. Mot. Summ. J. 5. Plaintiff relies on Dash v. Astrue, 2010 U.S. Dist. LEXIS 43193 (E.D. Va. Apr. 13, 2010), which remanded a denial decision to the Commissioner for lack of a legitimate credibility determination. Dash, at *26. While Dash does advise that Plaintiff's work history should be considered, the opinion also states that work history is by no means dispositive in determining whether a claimant is disabled. Id. Moreover, in Dash, the testimony given by the claimant regarding his disability was in line with the progress notes and reports of all treating physicians. See id. at *18-20 (detailing similarities between physician notes and complaints of Plaintiff over an eight year period).

In the immediate case, however, the ALJ called into question the credibility of Plaintiff's complaints because they were inconsistent with the results of medical examinations performed

11

by her various treating physicians. R. 17 ("Ms. Cooper's allegations of 'disabling' physical pain and depression are not consistent with objective findings on examinations, with the documented improvement in her shoulder and neck condition with surgery or with the reports of her treating psychiatrist."). The ALJ acknowledges the past work performed by Plaintiff (R. 18), but could not reconcile the discrepancies between her complaints and the results of multiple medical examinations. R. 17. Though the Social Security Ruling 96-7p does provide a list of factors that may be considered in evaluating a claimant's credibility, the Ruling also advises that "one strong indication of the credibility of an individual's statements is their consistency . . . with other information in the case record." SSR 96-7p, at *7.

Case law consistently suggests that Plaintiff's work record, standing alone, is insufficient to contravene an ALJ's credibility finding. See, e.g., Schaal v. Apfel, 134 F.3d 496, 502 (2nd Cir. 1998) (stating that "work history is just one of many factors" considered in assessing credibility); see also Laws v. Astrue, 2009 WL 327007, at *6 (E.D. Va. Oct. 8, 2009). While a good work history may help a plaintiff in assessing her credibility, "it cannot be a substitute for evidence of a medically supported disability." Johnson v. Astrue, 2009 WL 3491300, at *7 (W.D.N.Y.). Plaintiff's subjective claims of pain simply cannot take priority over objective medical evidence or lack thereof and, when taken as a whole, the Commissioner's decision is supported by substantial evidence. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

    B. The Weight of Dr. Qingyan Zhu's Medical Source Findings

Plaintiff next argues that the ALJ's failure to give considerable weight to Zhu's Physician Report (R. 524-27) was in error and not supported by substantial evidence. Mot. Summ. J. 6. She states that Zhu should have been given controlling weight,pursuant to 20 C.F.R. § 404.1527(d) because he was her long-term neurologist and was familiar with her conditions,

symptoms, and limitations. Id. at 7.

A treating source's opinion on issues regarding the nature and severity of impairment is to be given controlling weight if it is well supported by medically-accepted clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1526(b), 404.1527(d), 416.927(d)(2). However, it follows that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

In Plaintiff's case, there were several other treating physicians aside from Zhu, namely Plaintiff's orthopedist, Wardell. R. 16-18. Wardell personally observed and treated Plaintiff's condition over a significant period of time, seeing Plaintiff at least every few months beginning in 2007. R. 18. Zhu's Physician's Report findings (R. 524-27) are inconsistent with Wardell's progress notes created after Plaintiff's right shoulder surgery on May 27, 2008, indicating steady improvements of Plaintiff's shoulder and arm. R. 455-56.

Moreover, Zhu's Physician Report findings contradict the reality of his interactions with Plaintiff. That is, Zhu indicates that he saw Plaintiff once every one to two months between January, 2009 and October, 2009. R. 524. As the ALJ noted, Zhu only saw Plaintiff twice *total* during this time period. R. 18. On both of these occasions, Zhu noted Plaintiff's mental and physical conditions and examination results to be normal. Id. However, in the Physician's Report, Zhu indicated that Plaintiff had several very severe symptoms, including intense and throbbing pain, emotional instability, decreased memory, and confusion. R. 524.

Zhu's Physician Report is inconsistent with other substantial evidence on the record, namely his own progress notes and those of other treating physicians who had a longstanding relationship with Plaintiff, seeing her on a consistent basis. The ALJ's decision to give less

weight to Zhu's opinion (R. 18) is supported by the holding in Craig, which dictates that a physician's opinion must be accorded significantly less weight if it is inconsistent with other substantial evidence. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). A review of the medical evidence and discrepancies between Zhu's Physician Report and progress notes leads this Court to the conclusion that the ALJ's decision to not afford Zhu's opinion controlling weight is supported by substantial evidence.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiff's Motion for Summary Judgment be DENIED; that the Commissioner's Cross Motion for Summary Judgment be GRANTED; that the final decision of the Commissioner be AFFIRMED; and that Judgment be entered in favor of the Commissioner.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and

recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

_____/s/_____
Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia
November 8, 2011

## **CLERK'S MAILING CERTIFICATE**

       A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Robert Wayne Gillikin, II
Rutter Mills LLP
160 W. Brambleton Ave.
Norfolk, VA 23510
(757) 622-5000
Email: rgillikin@ruttermills.com

Lawrence Richard Leonard
United States Attorney's Office
101 W. Main St.
Suite 8000
Norfolk, VA 23510
(757) 441-6331
Email: lawrence.leonard@usdoj.gov

                                      Fernando Galindo, Clerk

                            By _____
                                      Deputy Clerk
                                    November __, 2011